**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| JOCELYN ROBERTS, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 3:21-cv-00750 |
| v. | ) ) | Hon. David W. Dugan |
| GRAPHIC PACKAGING INTERNATIONAL, LLC | ) ) ) | Presiding Judge |
| *Defendant.* | ) ) | |

**<u>PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM</u>**

203789

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ........................................................................... 2

    A.      The Biometric Information Privacy Act. ............................................. 2

    B.      Graphic Packaging's alleged BIPA violations. .................................... 3

    C.      Procedural History. ............................................................................... 5

    D.      The proposed Settlement. ..................................................................... 6

        1.      The Settlement Class. ................................................................ 6

        2.      Monetary relief for Settlement Class Members. ...................... 6

        3.      *Cy pres* distributions. ............................................................... 7

        4.      Settlement Class release. .......................................................... 7

        5.      Class Representative Service Award. ....................................... 8

        6.      Attorneys' fees and costs. ........................................................ 8

        7.      Administration and Notice. ...................................................... 9

III.    ARGUMENT ................................................................................................... 10

    A.      The settlement approval process. ....................................................... 10

    B.      The Settlement warrants preliminary approval. ................................. 12

        1.      The Class has been adequately represented. ........................... 12

        2.      The Settlement resulted from arm's length negotiations. ....... 14

        3.      The proposed Settlement treats Settlement Class Members
            equally. ..................................................................................... 15

        4.      The relief provided to the Settlement Class is outstanding. ... 15

            a.      The risks of continued litigation weigh, when
                viewed against the relief provided, weigh in favor
                of approval. ................................................................... 18

            b.      The proposed method of distribution is effective. ....... 20

            c.      The proposed attorney fee award and timing of
                payment support preliminary approval. ...................... 21

    C.      The Settlement Class should be certified. .......................................... 22

        1.      The Settlement Class is sufficiently numerous. ..................... 23

        2.      Plaintiff's claims are typical. ................................................. 23

        3.      Plaintiff and Counsel are adequate. ....................................... 24

        4.      Commonality is satisfied. ....................................................... 24

        5.      Common questions predominate. ........................................... 25

      **6.**    **A class action is the superior means of resolving this dispute.** ......... 26

      **7.**    **The Settlement Class is ascertainable.** ................................................ 28

  **D.**    **The proposed Notice plan is constitutionally sound.** ..................................... 28

**IV.**  **CONCLUSION** ........................................................................................................ 30

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)............................................................................................. 22

*Aranda v. Caribbean Cruise Line, Inc.,*
  No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017) ................................ 14

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
  616 F.2d 305 (7th Cir. 1980) ................................................................................. 10, 12

*Barnes v. Air Line Pilots Ass'n,*
  310 F.R.D. 551 (N.D. Ill. 2015)............................................................................. 26, 27

*Beaton v. SpeedyPC Software,*
  907 F.3d 1018 (7th Cir. 2018) ...................................................................................... 23

*Birchmeier v. Caribbean Cruise Line, Inc.,*
  896 F.3d 792 (7th Cir. 2018) ...................................................................................... 8, 21

*Boggess v. Hogan,*
  410 F. Supp. 433, 438 (N.D. Ill. 1975) ...................................................................... 10

*Burlinski, et. al v. TopGolf USA, Inc., et. al,*
  No. 19-cv-06700 (N.D. Ill. Oct. 13, 2021) ................................................................. 1

*Cothron v. White Castle Sys.,*
  2023 IL 128004.......................................................................................................... 19

*Felzen v. Andreas,*
  134 F.3d 873 (7th Cir. 1998) ...................................................................................... 10

*First Impressions Salon, Inc. v. National Milk Producers Federation,*
  2017 U.S. Dist. LEXIS 236996 (S.D. Ill. Sep. 29, 2017)...................................... 25

*Fournigault v. Independence One Mortgage Corp.,*
  234 F.R.D. 641(N.D. Ill. 2006)................................................................................. 12

*Goldsmith v. Technology Solutions Co.,*
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, (N.D. Ill. Oct. 10, 1995) ...................... 10, 19

*Hale v. State Farm Mut. Auto. Ins. Co.,*
  No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018)..................... 21

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) .......................................................................... 15

*In re Facebook Biometric Info. Privacy Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018) ................................................................... 25, 26

*In re Google Buzz Privacy Litig.*,
   No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ........................ 17

*In re Google LLC Street View Electronic Communications Litigation*,
   No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) .................... 17

*In re NCAA Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) .......................................................................... 30

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11  (E.D.N.Y. 2019) ......................................................................... 11

*In re Southwest Airlines Voucher Litig.*,
   No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................. 18

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ............................................................................. 10

*Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*,
   2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) ............................................. 1

*Jones v. CBC Rest. Corp.*,
   No. 19-cv-06736 (N.D. Ill. Oct. 22, 2020) .......................................................... 1

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
   877 F.3d 276 (7th Cir. 2017) ............................................................................. 30

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
   No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255 (N.D. Ill. Feb. 19, 2014) ............ 26

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................................. 17

*Lane v. Schenker, Inc.*,
   No. 19-cv-00507-NJR (S.D. Ill. Nov. 17, 2020) .................................................. 1

*Langendorf v. Skinnygirl Cocktails, LLC*,
   306 F.R.D. 574 (N.D. Ill. 2014) .......................................................................... 24

*Lawrence v. First Fin. Inv. Fund V, LLC*,
   2021 U.S. Dist. LEXIS 162184 (D. Utah Aug. 26, 2021) ...................................... 20

*Marshal v. Life Time Fitness, Inc.*,
   2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) ............................................... 16

*Martin v. JTH Tax, Inc.*,
   No. 13-6923 (N.D. Ill. Sept. 16, 2015) .................................................................. 21

*Martinez v. Nando's Rest. Grp., Inc.*,
   No. 19-cv-07012 (N.D. Ill. Oct. 27, 2020) ............................................................. 1

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ......................................................................... 22, 25

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................ 28

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) .................................................................. 22, 27, 28

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
   2019-CH-11575 (Cir. Ct. Cook Cty. Sept. 2, 2021) .............................................. 16

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................................ 15

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
   231 F.R.D. 280 (N.D. Ill. 2005) ........................................................................... 23

*Parker v. Time Warner Entm't Co., L.P.*,
   631 F. Supp. 2d 242 (E.D.N.Y. 2009) .................................................................. 17

*Pelka v. Saren Restaurants Inc.*,
   2019-CH-14664 (Cir. Ct. Cook Cty. Apr. 9, 2021) .............................................. 16

*Prelipceanu v. Jumio Corp.*,
   2018-CH-15883 (Cir. Cook Cty. July 21, 2020) .................................................. 16

*Rogers v. BNSF Ry. Co.*,
   2023 U.S. Dist. LEXIS 113278 (N.D. Ill. June 30, 2023) ..................................... 19

*Rohlfing v. Manor Care*,
   172 F.R.D. 330 (N.D. Ill. 1997) ........................................................................... 27

*Rysewyk v. Sears Holdings Corp.*,
  No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) ............... 12

*Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*,
  2018-CH-02651 (Cir. Ct. Cook Cty. Aug. 10, 2021) ...................................................... 16

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................... 19

*Schulte v. Fifth Third Bank*, No. 09-CV-6655,
  2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010) ..................................... 14

*Sekura v. L.A. Tan Enters., Inc.*,
  2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) ................................................. 21

*Sherman v. Brandt Industries USA*,
  No. 20-cv-1185 (C.D. Ill. July 26, 2022) .................................................................... 8

*Smith v. Dearborn County*,
  244 F.R.D. 512 (S.D. Ind. 2007) ............................................................................. 22

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ............... 14

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) ................................................................................... 23

*Svagdis v. Alro Steel Corp.*,
  2017-CH-12566 (Cir. Ct. Cook Cty.) ...................................................................... 21

*Swanson v. American Consumer Industries, Inc.*,
  415 F.2d 1326 (7th Cir. 1969) ................................................................................. 22

*Sykes v. Clearstaff, Inc.*,
  2019-CH-03390 (Cir. Ct. Cook Cty. Jan 5, 2021) ................................................. 16

*Taylor v. Shutterfly, Inc.*,
  No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069 (N.D. Cal. Dec. 7, 2021)............. 20

*Trotter v. Summit Staffing*,
  2019-CH-02731 (Cir. Ct. Cook Cty. Aug. 4, 2020) ............................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................................. 24

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ........................................................................... 12

*Wortman v. Yang,*
  701 F. App'x 554 (9th Cir. 2017)...................................................................... 30

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
  2018-CH-02140 (Cir. Ct. Cook Cty. Aug. 4, 2020) .......................................... 21

*Zhirovetskiy v. Zayo Group, LLC,*
  2017-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) ...................................... 1, 16

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*.................... passim

**Other Authorities**

Black's Law Dictionary (10th ed.2014)........................................................................ 14

Illinois House Transcript, 2008 Reg. Sess. No. 276 (May 30, 2008) ............................................ 2

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... passim

**Treatises**

*4 Newberg on Class Actions* § 13:53 (5th ed.) .......................................................... 20

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)......................................... 10, 11

*Manual for Complex Litig.,*
  at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004)................................. 11, 28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Jocelyn Roberts respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant Graphic Packaging International, LLC ("Graphic Packaging" or "Defendant").

Mr. Roberts alleges Graphic Packaging violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting the Class's hand geometry without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.

After engaging in motion practice (including Defendant's motion to dismiss and motion to stay) and conducting discovery, the parties participated in an in-person, all-day mediation session overseen by the Honorable Judge Thomas Rakowski (ret.) at JAMS. These efforts culminated in a class-wide Settlement that provides for one of the largest per-class member recovery of any BIPA Settlement to date[1]. If approved, Graphic Packaging will pay a gross recovery of $1,654.74 to each of the 600 Settlement Class Members for a total of $992,844.00 into a non-reversionary Settlement Fund. After accounting for litigation expenses, Notice and Administration Costs, reasonable attorney's fees, and Plaintiff's incentive award, the Settlement Administrator will automatically

---

[1] *See, e.g., Burlinski, et. al v. TopGolf USA, Inc., et. al,* No. 19-cv-06700, ECF No. 103 (N.D. Ill. Oct. 13, 2021) (approving settlement providing gross recovery of approximately $1,000 per class member); *Martinez v. Nando's Rest. Grp., Inc.*, No. 19-cv-07012, ECF No. 63 (N.D. Ill. Oct. 27, 2020) (same); *Jones v. CBC Rest. Corp.,* No. 19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (gross recovery of $800 per class member); *Lane v. Schenker,* No. 19-cv-00507-NJR (S.D. Ill. Nov. 17, 2020) (gross recovery of $1,000 per class member); *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (gross recovery of $450 per class member); *Johnson v. Rest Haven Illiana Christian Convalescent Home, Inc.*, 2019-CH-01813 (Cir. Ct. Cook Cty. Oct. 18, 2019) (gross recovery of $894.98 per class member).

issue each Settlement Class Member a check for approximately $1,014 — all without the need to file a claim or take any other action.

As demonstrated below, the exceptional relief provided by the Settlement, along with its equitable and effective method of distribution, places the Settlement squarely within the range of possible approval, whereas the proposed Settlement Class easily satisfies Rule 23's requirements for conditional certification. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Plaintiff's attorneys as Class Counsel, approve the proposed form and method of Class Notice, and set a Final Approval Hearing.

## II.      RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally-identifiable information, biometric information such as fingerprints cannot be changed (much less replaced) when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in 2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g). The statute features several safeguards that protect Illinois' citizens' ability to maintain control over their biometric information.

One such safeguard is Section 15(b)'s informed consent regime. As relevant to this case, this provision prohibits an employer from collecting its employee's biometric information without first: (1) providing the employee with a written disclosure explaining that biometric information is being collected, the reason for the collection, and the length of time for which the biometric

information will be retained; and (2) obtaining a signed written release from the employee authorizing the collection. 740 ILCS 14/15(b).

Section 15(a) of BIPA, in turn, requires private entities who possess biometric information to destroy that data once the purpose for which it was collected has been satisfied. *See* 740 ILCS 14/15(a).

### B. Graphic Packaging's alleged BIPA violations.

Graphic Packaging Solutions, Inc. is a provider of consumer packaging solutions with roughly 128 facilities located throughout North America, Europe, and Asia.  Between June 2016 and April 2017, Plaintiff worked as a janitor at Graphic Packaging's Centralia, Illinois ("Centralia Facility") via a local staffing agency.

During the relevant time, Graphic Packaging utilized a biometric device at the Centralia Facility known as the "Hand Punch 4000," which, according to the manufacturer, is part of its third generation line of "biometric hand geometry time and attendance terminals." In a nutshell, the Hand Punch 4000 scans the user's hand geometry and compares it against a previously saved scan to verify his or her identity. Aside from tracking employee time and attendance, the Hand Punch 4000 can also be hardwired to a door to serve as an "access device," so that anyone seeking entry must verify his or her identity through the device's hand scanner.  During the relevant time, Graphic Packaging implemented several Hand Punch 4000 terminals at the Centralia Facility, two of which were used as access devices to restrict access to the building.

Discovery has shown precisely how the Hand Punch 4000 operates.  To use the Hand Punch 4000, one must first "enroll" in the system by placing his or her hand on a scanner, which acquires an image of the hand, takes various geometric measurements (such as the lengths, widths, heights, area, and perimeter of the hand and fingers, as well as the ratios between those features), and

converts the results into a numerical template unique to the user (i.e. the "Template" or "Hand Template"). The user's Hand Template is then stored for subsequent identification.

Once the enrollment process is complete, users can begin using the Hand Punch 4000 to record their hours and unlock doors to secured areas.  To do so, a user must place his or her hand on the sensor, at which point the Hand Punch 4000 generates another Hand Template, compares it to every Template stored in the database to determine whether there's a match, and if so, verifies the user's identity.



According to Plaintiff, Graphic Packaging's systematic collection and storage of the Settlement Class's highly-sensitive biometric data violated BIPA in two discrete ways.  First, Plaintiff alleges Graphic Packaging violated Section 15(a) of the statute by failing to implement and adhere to a publicly-available policy governing the retention and destruction of the biometric data in its possession. *See* Compl. at ¶¶ 26, 36-37, 48-57. Second, Plaintiff alleges Graphic Packaging violated Section 15(b) by collecting, storing, and using the Settlement Class's biometric data without first providing the necessary disclosures or receiving informed written consent. *Id.* at ¶¶ 24-25, 32-35, 58-68.

On September 1, 2021 — shortly after Plaintiff commenced this case — Graphic Packaging ceased using the Hand Punch 4000.

203789

- 4 -

**C. Procedural History.**

On June 29, 2021, Plaintiff commenced this class action. On July 22, 2021, Graphic Packaging moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc.* and *Marion v. Ring Container Technologies, LLC*, as well as the Seventh Circuit's resolution of *Cothron v. White Castle Sys.  See* ECF No. 10.  On August 17, 2021, the Court granted Graphic Packaging's motion and stayed the case.  *See* ECF No. 17.

On March 6, 2023, the Court lifted the stay and entered a scheduling order shortly thereafter.  *See* ECF Nos. 29, 31. The Parties then commenced discovery, which entailed multiple sets of interrogatories and document requests, as well as the deposition of the Hand Punch 4000's manufacturer.

The Parties subsequently agreed to mediate this dispute in person on September 18, 2023 before the Honorable Thomas Rakowski (Ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Over the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases.[2] At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[3] With the assistance of Judge Rakowski — and six hours of arm's-length negotiations — the Parties reached an agreement-in-principle on the material terms of a class-wide settlement.

Following the mediation, the Parties continued extensive negotiations over the next two weeks on their remaining points of dispute, which ultimately culminated in the fully executed Agreement for which the Parties now seek preliminary approval, a copy of which is attached hereto as **Exhibit A.**

---

[2] *See* Declaration of Keith J. Keogh ("Keogh Decl.") attached as **Exhibit B**, ¶ 4.
[3] *Id.* at ¶ 5.

**D.  The proposed Settlement.**

The Settlement's details are contained in the Agreement signed by the Parties. *See* **Ex. A.**

For purposes of preliminary approval, the following summarizes the Agreement's terms:

**1.  The Settlement Class.**

The Settlement Class is defined as follows:

> The 600 individuals who used a Hand Punch 4000 terminal at Defendant's Centralia, Illinois facility between June 29, 2016 and September 1, 2021.

**Ex. A** at §§ II.30.[4]  Although the Agreement refers to a class consisting of 559 individuals, *id.*, after executing the Agreement the parties coordinated on identifying all class members and obtaining addresses for those contractors and vendors who used the Hand Punch 4000 during the Class Period to access the Centralia facility, which resulted in the identification of an additional 41 class members.  *See* **Ex. B** (Keogh Decl.) at ¶ 7. Thus, the Class consists of 600 individuals. *Id*.

**2.  Monetary relief for Settlement Class Members.**

The Settlement requires Graphic Packaging to create a non-reversionary Settlement Fund of $992,844.00 from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive award approved by the Court. *See* **Ex. A** (Agreement) at §§ II.36, V.49, V.50, X.65.[5]

---

[4] Excluded from the Settlement Class are: (1) the district and magistrate judges presiding over this case; (2) the judges of the Seventh Circuit; (3) the immediate families of the preceding person(s); (4) any Released Party; and (5) any Settlement Class Member who timely opts out of this Action.

[5] The Settlement requires Graphic Packaging to provide a *pro rata* increase for each subsequently identified Settlement Class Member.  *See* **Ex. A** at § V.50. Because the 559 Settlement Class Members identified prior to the execution of the Agreement were entitled to receive a gross recovery of $1,654.74, the additional 41 Settlement Class Members identified increased the Settlement Fund to $992,844.00 (1,654.74 x 600 = $992,844.00).

No amount of the Settlement Fund will revert to Graphic Packaging, and Settlement Class Members are not required to submit a claim or take any action to receive compensation. Instead, the Settlement Administrator will automatically issue checks to the last known address of each Settlement Class Member who declines to opt out. *Id.* at §§ II.6, X.64. Checks issued to Settlement Class Members shall remain valid for 90 days from the date of their issuance. *Id.* at § X.64. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least five dollars ($5.00) to each Settlement Class Member who cashed their initial check, those remaining funds will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* at § X.65.

### 3. *Cy pres* distributions.

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, Plaintiff suggests any such funds be sent to the Electronic Privacy Information Center as that organization is closely related to the privacy issues of this BIPA class. **Ex. A** (Agreement) at § X.65.  The class notice will identify this organization.

### 4. Settlement Class release.

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all "claims for statutory damages under the [BIPA], 740 ILCS 14/1 *et seq.*, or regarding the use, collection, capture, receipt, maintenance, storage, transmission, or disclosure of biometric identifiers that Settlement Class members claim, might claim, or could have claimed in any court or administrative proceeding, for all periods up to and including the date of Final Approval (the "Released Claims")." **Ex. A** (Agreement) at § XI.66.

### 5. Class Representative Service Award.

The Agreement provides that Plaintiff may petition the Court for a Service Award. **Ex. A** (Agreement) at § V.53. There is no clear sailing provision as to this request. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id*. Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff will request a Service Award of $10,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6. Attorneys' fees and costs.

Class Counsel will apply to the Court for an award of attorneys' fees and costs on the same date notice is sent to the class, which will be posted to the settlement website to allow class members to review the motion and basis for attorney fees. **Ex. A** (Agreement) at §§ V.52, VI.56.B. Like the incentive award, there is no clear sailing agreement regarding attorney fees.

As will be addressed in Class Counsel's motion for attorneys' fees, the Seventh Circuit has endorsed approximately 36% of the common fund after settlement administration costs are deducted in addition to reasonable expenses. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million); *Sherman v. Brandt Industries USA*, No. 20-cv-1185, ECF No. 85 ¶¶ 11(f), 11(i) (C.D. Ill. July 26, 2022); (BIPA class action awarding fee award of 36% of settlement fund less admin costs).

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the Settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class

Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. **Ex. A** at § V.52  Further, the Class Notice will inform the Settlement Class Members that Class Counsel will seek both as a percentage and dollar amount.

### 7.   Administration and Notice.

All costs of notice and claims administration shall be advanced by Graphic Packaging, credited against the Settlement Fund. The Administrator will be American Legal Claim Services, LLC ("ALCS") subject to this Court's approval. **Ex. A** (Agreement) at §II.28. The Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice; (2) setting up and maintaining the settlement website and toll-free number; and (3) issuing settlement payments. *Id.* at §§ VI, X.

Within fourteen (14) days of the entry of the Preliminary Approval Order, the Administrator will issue the Class Notice (Exhibit 3 to the Agreement) via direct mail to all Settlement Class Members. *Id*. at §§ II.17, VI.56.A. Before doing so, the Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. *Id.* For Settlement Class Members whose Notice is returned as undeliverable, the Administrator will conduct a database search and re-issue the Mail Notice to all Settlement Class Members for whom an alternative address can be found. *Id.*

Further, the Administrator will establish and maintain a Settlement Website. *Id.* at § VI.56.B. The Settlement Website will include general information such as the Agreement, Website Notice, the Preliminary Approval Order, the operative Complaint, the attorney fee motion and any other materials the Parties agree to include. *Id.*

## III.     ARGUMENT

### A.  The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public

and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1)  Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25. With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.

Rule 23 was amended effective December 1, 2018. Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i—ii) (emphasis in original). Both requirements are satisfied here.

**B. The Settlement warrants preliminary approval.**

When deciding whether to grant preliminary approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Rysewyk v. Sears Holdings Corp.*, No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019) (Shah, J.).[6] Each of these factors supports preliminary approval.

**1. The Class has been adequately represented.**

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first two prongs of the adequacy analysis are satisfied here. To begin, Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class he seeks to represent. Plaintiff and the other Settlement Class Members are all individuals who used the Hand Punch 4000 and share identical claims arising from a common course of conduct: Graphic

---

[6] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

203789

Packaging's allegedly unlawful collection and retention of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement by retaining counsel, assisting his attorneys in investigating the Settlement Class's BIPA claims, answering interrogatories and producing responsive documents, reviewing and approving the Class Action Complaint prior to filing, regularly conferring with his attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See* **Ex. B** (Keogh Decl.) at ¶ 12.

The third prong of the adequacy analysis is also satisfied because proposed Class Counsel have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA, and have been found adequate and appointed class counsel in scores of cases arising under various other consumer protection statutes. *See id.* at ¶¶ 13-55. Drawing on this experience, proposed Class Counsel were able to extensively evaluate the merits of this case, Graphic Packaging's defenses, the benefits of the proposed Settlement, and the attendant risks of litigation.

Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, briefing a motion to stay, obtaining written and oral discovery on merits and class issues, conducting third-party discovery to obtain information about the data captured by the Hand Punch 4000 and to identify the Settlement Class, and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *See id.* at ¶ 4. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy prong met.

203789

- 13 -

## 2. The Settlement resulted from arm's length negotiations.

The second 23(e)(2) factor focuses on whether the Settlement is the product of an "arm's length transaction, which Black's Law Dictionary defines as:

> 1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.

Black's Law Dictionary (10th ed.2014).

The Settlement falls squarely within this definition. As detailed above, the Settlement is the result of extensive, arm's length negotiations between attorneys experienced in the litigation, certification, trial, and settlement of consumer privacy class actions, carried out during an all-day mediation session held before Judge Rakowski. *See* **Ex. B** (Keogh Decl.) at ¶¶ 4-5. And, after reaching an agreement on the material points of the settlement with the assistance of Judge Rakowski, the Parties spent the next two weeks negotiating the finer details of the Agreement before executing it on January 12, 2022. *Id.* at ¶ 5.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The Settlement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

It also provides for an increase in the amount if additional class members are identified, which is what happened here.

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. See *Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3.   The proposed Settlement treats Settlement Class Members equally.

The next Rule 23(e)(2) consideration also supports approval where the proposed settlement treats all members the same. Here, each Settlement Class Member has identical BIPA claims against Graphic Packaging, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). No Settlement Class Member is treated differently, and each can object or opt out in the same fashion. Because there is no disparate treatment between members, the settlement merits approval.

### 4.   The relief provided to the Settlement Class is outstanding.

The most critical Rule 23(e)(2) factor analyzes whether the relief provided for the class is adequate. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, Defendant has agreed to create a $$992,844.00 Settlement Fund for a class of 600 individuals. *See* **Ex. A** (Agreement) at § II.30; *see also* Section II.D.1-2, *supra*. The Settlement Fund is non-reversionary, and each Settlement Payment will be automatically issued to the last known address of each Settlement Class Member without the need for any class member to submit a claim. Thus, the Settlement represents a significant and immediate value for those Class Members—a gross amount of $1,655 apiece. As noted above, Plaintiff estimates that every single class member will receive $1,013.55[7] after reductions for Administrative Expenses, attorney's fees, and the incentive award, making this — to Plaintiff's knowledge — the largest per-class-member recovery of any BIPA settlement to date.

Indeed, this class relief greatly exceeds the per-claimant recoveries obtained in analogous BIPA class actions. *See Sekura,* 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) (net recovery of $125 to $150 per claimant); *Zhirovetskiy*, 2017-CH-09323 (Cir. Ct. Cook Cty. Apr. 8, 2019) (net recovery capped at $400 per claimant); *Marshal v. Life Time Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty. July 30, 2019) (net recovery of approximately $270 per claimant, as well as dark web monitoring valued at approximately $130.00 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cty. July 21, 2020) (net recovery of $262.28 per claimant); *Trotter v. Summit Staffing,* 2019-CH-02731 (Cir. Ct. Cook Cty. Aug. 4, 2020) (net recovery of $102); *Kusinski v. ADP, LLC*, 2017-CH-12364 (Cir. Ct. Cook Cty. Feb. 10, 2021) (net recovery of $250 per claimant); *O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*, 2019-CH-11575 (Cir. Ct. Cook Cty. Sept. 2, 2021) (net recovery of $384.09); *Pelka v. Saren Restaurants*

---

[7] Plaintiff's estimate is based on a pro-rata distribution after deduction of $13,070.00 in administration costs, $8,925.12 in reimbursed expenses, $10,000 for incentive award, and $352,719.64 for fees. As explained below, Plaintiff will separately file a fee petition and there is no clear sailing agreement for fees or incentive award.

*Inc.*, 2019-CH-14664 (Cir. Ct. Cook Cty. Apr. 9, 2021) (net recovery of $289 per claimant); *Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company,* 2018-CH-02651 (Cir. Ct. Cook Cty. Aug. 10, 2021) (net recovery of $256-$510); *Sykes v. Clearstaff, Inc*., 2019-CH-03390 (Cir. Ct. Cook Cty. Jan 5, 2021) (net recovery of $298.04).

Outside the realm of BIPA, the cash payments afforded by the Settlement Agreement dwarf the recoveries typically seen in privacy class actions, which often provide class members with little (if any) monetary relief. *See, e.g., Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (upholding settlement providing only $9.5 million in *cy pres* relief despite that statutory claims at issue provided for significant statutory damages); *In re Google LLC Street View Electronic Communications Litigation*, No. 3:10-md-02184, 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) (approving *cy pres* distribution of $13 million fund in case with 60 million person class (equating to $0.22 per person before fees, expenses, or administration costs) in Electronic Communications Privacy Act (ECPA) matter with $10,000 available statutory damages); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving settlement consisting solely of $8.5 million *cy pres* payment where statutory claims at issue provided for statutory damages of up to $10,000 per claim). *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 261-62 (E.D.N.Y. 2009) ("When the benefit is . . . placed in the context of the risks and delay of continued litigation[,]" a settlement providing $6.75 per class member was "clearly within the range of reasonableness" for claims brought under the Cable Communications Policy Act of 1984 which provides for minimum statutory damages of $1,000).

In sum, the relief provided by the proposed Settlement is more than adequate when compared against comparable results.

Finally, as shown below, the adequacy of the class relief is further illustrated by the sub-factors set forth in Rule 23(e)(2).

### a. The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals, as well as the risk that goes with it.

While Plaintiff remains confident in the strength of his claims, Graphic Packaging denied all of his material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Class. For starters, Graphic Packaging intended to argue it has no liability under BIPA because the information captured by Hand Punch 4000's hand-scanner does not fall within the statutory definition of "biometric identifiers" or "biometric information," but instead falls within a third category outside of BIPA's purview. *See* ECF No. 33 at 23. Defeating this highly technical defense would entail costly expert and third-party discovery. While Plaintiff is confident he would prevail on this issue, the lack of any guiding precedent offers no guarantee of success at summary judgment or trial.

In addition, Graphic Packaging planned to avoid liability by proving, among other issues, that: (1) Plaintiff's and the Settlement Class's claims are barred by the applicable statute of limitations; (2) Graphic Packaging is not subject to BIPA because it satisfies the statutory exemption for governmental contractors; and (3) Plaintiff and the Settlement Class consented to the collection, use, and storage of their biometric data. *See* ECF No. 33 at 23-24. A victory on

- 18 -

these defenses could doom the case in its entirety or, at the very least, greatly reduce the size of the proposed class and preclude any recovery for scores of class members who stand to benefit from the Settlement. The risks posed by continued litigation are readily apparent given the number of other legal and factual issues that have gone untested to date without controlling legal authority. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

And, before resolving Graphic Packaging's substantive defenses, Plaintiff would first need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, his success is certainly not guaranteed.

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Graphic Packaging could seek a reduction of damages based on the argument an award of $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution. *See Cothron v. White Castle Sys.,* 2023 IL 128004, ¶ 42; *see also Rogers v. BNSF Ry. Co.,* 2023 U.S. Dist. LEXIS 113278, *30 (N.D. Ill. June 30, 2023) (vacating damage award and ordering new jury trial limited to damages).[8]

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result.

---

[8] Plaintiff respectfully disagrees damages should be left to the discretion of the jury as *Rogers* found, but instead subject to a Due Process analysis after judgment.

Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith v. Tech. Sols. Co.,* No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of preliminary approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring "only legitimate claims" are paid. *4 Newberg on Class Actions* § 13:53 (5th ed.).

Unsurprisingly, courts routinely find this factor satisfied where class members do not need to take any affirmative steps to receive their portion of the settlement fund. *See, e.g., Taylor v. Shutterfly, Inc.,* No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *20 (N.D. Cal. Dec. 7, 2021) (finding distribution method reasonable where "[a]ll Class Members automatically receive benefits under the Settlement, without the need to file a Claim."); *Lawrence v. First Fin. Inv. Fund V, LLC,* 2021 U.S. Dist. LEXIS 162184, at *14-15 (D. Utah Aug. 26, 2021) ("Here, the method of distributing relief to the class is sufficiently effective and …. no action is required of any class member to receive the benefits of the Settlement.").

The same result is warranted here. Settlement Class Members do not need to submit a claim form or take any action to obtain their share of the class award. Instead, the Administrator will simply distribute each *pro rata* share of the Settlement Fund to the last known address of each Settlement Class Member, which can easily be obtained from Graphic Packaging's books and records, as well as those of Graphic Packaging's vendors.  This proposed method of distribution is clearly effective and weighs in favor of preliminary approval.

### c.  The proposed attorney fee award and timing of payment support preliminary approval.

The final relevant sub-factor[9] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee, nor does it provide that Graphic Packaging has agreed to any set fee amount. Instead, Class Counsel anticipates asking the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount Illinois courts and others within the Seventh Circuit routinely award. *See Birchmeier supra* 796-97 (7th Cir. 2018) (affirming attorney fees in consumer class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million); *See, e.g,. Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty.) (BIPA class action awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cty. Dec. 5, 2018) (same, in BIPA class action); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cty.)

---

[9] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* **Ex. B** (Keogh Decl.) at ¶ 9, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

(same, in BIPA class action); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.) (38% of total fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.) (36% of the fund net admin costs); *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

Class Counsel will file their application on the date notice is sent, which will then be posted on the settlement website allowing Class Members to review or object.

Thus, the provisions regarding fees are fair, reasonable and support approval.Considering all these factors, the relief provided to the class is more than adequate and merits approval.

### C.    The Settlement Class should be certified.

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

Plaintiff has demonstrated the Settlement Class satisfies the criteria imposed by Rule 23(a), which requires that: (i) the proposed class be so numerous that joinder of individual class members is impracticable; (ii) there be questions of law and fact common to the class; (iii) the proposed class representative's claims be typical of the class claims; and (iv) the named class representative and counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a); *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Settlement Class also satisfies Rule 23(b)(3)'s requirements that: (i) common questions of law or fact predominate over individual issues; and (ii) the class action device is superior to other means of resolving the claims. Fed. R. Civ. P. 23(b)(2). Finally, the class is "ascertainable"—*i.e.* defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Here, the Settlement Class satisfies each prerequisite and should thus be certified for settlement purposes.

### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. A class of as few as 40 is sufficient. *Smith v. Dearborn County*, 244 F.R.D. 512, 517 (S.D. Ind. 2007) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, fn.9 (7th Cir. 1969)). Here, the Settlement Class consists of 602 members, which easily satisfies numerosity.

### 2. Plaintiff's claims are typical.

A putative class representative also must demonstrate his claims are typical of the claims of the class he seeks to represent. Fed. R. Civ. P. 23(a)(3). This prong of the Rule 23 analysis simply requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co*., 633 F.3d 574, 586 (7th Cir. 2011); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). The critical issue is whether the plaintiff's claim "arise[es] from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018); *accord, McGlenn v. Driveline Retail Merchandising, Inc.*, No. 18-cv-2097, 2021 U.S. Dist. LEXIS 9532, at *16 (C.D. Ill. Jan. 19, 2021).

Here, there is no daylight between Plaintiff's claims and those of the Settlement Class. Instead, those claims all flow directly from Graphic Packaging's alleged failure to: (1) inform Plaintiff and the Settlement Class, in writing, about the collection of their biometric data, along with the purpose and length of term for the collection; (2) obtain Plaintiff and the Settlement Class's informed written consent prior to collecting their biometric data; (3) implement a publicly-

available policy governing the retention and destruction of biometric data; and (4) permanently destroy Plaintiff's and the Settlement Class's biometric data at the earliest practicable time. Compl., ¶¶ 24-26, 32-37.  Hence, the outcome of Plaintiff's and the Settlement Class's claims depend entirely on *Graphic Packaging's* biometric collection and destruction practices—*i.e.* a common course of conduct. Consequently, Plaintiff is typical of the Settlement Class.

### 3.   Plaintiff and Counsel are adequate.

Adequacy means Plaintiff and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As demonstrated above, both Plaintiff and proposed Class Counsel fully satisfy this requirement. *See* Section III.B.1, *supra*.

### 4.   Commonality is satisfied.

Commonality requires that "there are questions of law or fact common to the class" and that "the class members have suffered the same injury." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The class claims must "depend upon a common contention … capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. A single common question is sufficient to satisfy Rule 23(a)(2). *Langendorf v. Skinnygirl Cocktails, LLC,* 306 F.R.D. 574, 589 (N.D. Ill. 2014) (collecting cases).

Commonality is satisfied here. Plaintiff's and the Settlement Class's BIPA claims are based on the same contention and allegedly unlawful course of conduct: That Graphic Packaging violated Sections 15(a) and 15(b) of BIPA by collecting, storing, and using the Settlement Class's biometric data without obtaining informed written consent or implementing and adhering to a publicly-available biometric retention and destruction policy. This contention depends entirely on common questions that can be resolved on a class-wide basis "in one stroke," such as: (1) whether the hand

print data collected by the Hand Punch 4000 system qualify as biometric identifiers or biometric information under BIPA, *see* 740 ILCS 14/10; (2) whether Graphic Packaging provided sufficient written disclosures regarding the collection of Plaintiff's and the Settlement Class's biometric data, along with the purpose and length of term for the collection, *see* 740 ILCS 14/15(b); (3) whether Graphic Packaging obtained signed releases from Plaintiff and the Settlement Class authorizing the collection, use, and storage of their biometric data, *id.*; (4) whether Graphic Packaging implemented and adhered to a publicly-available policy governing the retention and destruction of biometric data, *see* 740 ILCS 14/15(a); and (5) whether Graphic Packaging's alleged BIPA violations were negligent or reckless, *see* 740 ILCS 14/20.   These questions are more than sufficient to demonstrate commonality. *See, e.g., In re Facebook Biometric Info. Privacy Litig*., 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("[T]here is no doubt that a template-based [BIPA] class poses common legal and factual questions….").

### 5.   Common questions predominate.

Rule 23(b)(3) requires "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815. Put another way, the critical issue is "whether common evidence could suffice to make out a *prima facie* case for the class." *First Impressions Salon, Inc. v. National Milk Producers Federation*, 2017 U.S. Dist. LEXIS 236996, at *32 (S.D. Ill. Sep. 29, 2017).

That is the case here. Plaintiff's and the Settlement Class's claims for violation of Section 15(a) and (b) hinge entirely on the common questions identified above, all of which can be resolved through class-wide evidence maintained by Graphic Packaging. The common questions posed by

the Section 15(b) claim, for instance, can be easily resolved by reviewing the uniform disclosures and releases Graphic Packaging provided to Class Members (if any), along with evidence regarding the type of data captured by the Hand Punch 4000. As to the Section 15(a) claim, the question of whether Graphic Packaging destroyed the Settlement Class's biometric data once it was no longer necessary is a straightforward factual issue that turns on Graphic Packaging's data destruction policies (or lack thereof).

In sum, the BIPA violations at issue can, for provisional certification purposes, be determined on a class-wide basis in a single adjudication without consideration of any individualized issues. *See, e.g., In re Facebook*, 326 F.R.D. at 545-48 (predominance satisfied where liability turned on class-wide issues—whether defendant's facial recognition software captured biometric identifiers, and, if so, whether defendant's uniform disclosures complied with Section 15(b)'s informed regime); *see also Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255, at *33 (N.D. Ill. Feb. 19, 2014) ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). As such, predominance is satisfied.

### 6. A class action is the superior means of resolving this dispute.

Rule 23(b)(3) requires "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule provides four criteria that govern superiority analysis, all of which weigh in favor of certification.

First, the "extent and nature" of any parallel litigations do not defeat superiority, as there is no indication any Class Member filed their own BIPA suit against Graphic Packaging. *See* Fed. R. Civ. P. 23(b)(3)(B) (one superiority factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members"). Second, it is desirable to concentrate

the litigation, including the settlement approval process, in this forum because the events underlying the Settlement Class's claims arose in this district. *See* Fed. R. Civ. P. 23(b)(3)(C); *see also Barnes v. Air Line Pilots Ass'n,* 310 F.R.D. 551, 562 (N.D. Ill. 2015). Third, it is highly unlikely any class members have an interest in individually controlling this action, *see* Fed. R. Civ. P 23(b)(3)(A), "as no [putative Class members] have brought individual suits." *Barnes,* 310 F.3d at 562. That is hardly surprising, given that BIPA provides for the recovery of liquidated damages of $1,000 or $5,000 depending on the defendant's level of culpability. *See* 740 ILS 14/20(1)-(2). Any individual recovery would likely be dwarfed (if not swallowed whole) by litigation costs, like the need for costly expert and/or third-party discovery on the technical functionality of Hand Punch 4000 and the related biometric information.

Finally, the fourth factor—"the likely difficulty in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—is a non-issue where, as here, certification is sought solely for settlement purposes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Nevertheless, manageability is not a problem here. There are no individual issues that could present any overwhelming practical or administrative issues at trial, and the notice process will be trivially easy in this case given that Graphic Packaging and its vendors possess the names and last known addresses for the Settlement Class. *See Rohlfing v. Manor Care,* 172 F.R.D. 330, 343 (N.D. Ill. 1997); *Barnes*, 310 F.R.D. at 562.

As such, all four factors set forth in Rule 23(b)(3) support a finding of superiority.

### 7.   The Settlement Class is ascertainable.

Finally, the Settlement Class is ascertainable. Although not an element of Rule 23, the ascertainability requirement imposes a modest bar. This simply requires the class to be defined based on "objective" criteria. *Mullins,* 795 F.3d at 672.

Here, the Settlement Class definition is based entirely on objective components — namely, the use of the Hand Punch 4000 at Graphic Packaging's Centralia facility during the applicable Class Period. Further, Settlement Class Members are not only ascertainable, but can be readily identified from Graphic Packaging's records and those of its vendors. Accordingly, the ascertainability requirement is satisfied. *Mullins,* 795 F.3d at 672.

As shown above, the Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), as well as the Seventh Circuit's ascertainability standard. Thus, the Court should certify the proposed Settlement Class.

### D.   The proposed Notice plan is constitutionally sound.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached hereto as **Exhibits C-D**, satisfy all of the criteria above. The Notice Plan provides that direct, individual notice ("Mail Notice") will be mailed by the Administrator to the last known address of each Settlement Class Member within 14 days of entry of the Preliminary Approval Order. **Ex. A** (Agreement) at §§ II.17, VI.56.A. For all mailings returned as undeliverable, the Administrator will use reasonable means to obtain an updated address and re-issue the Mail Notice to those Settlement Class Members. *Id.* at § VI.56.A.

The Mail Notice provides information about the claims at issue, the cash benefits provided by the Settlement, the process for distributing those cash benefits the proposed attorney fee and incentive awards, and the procedure for excluding oneself or objecting to the Settlement. *See* **Ex. C** (Mail Notice). Settlement Class Members will have up to and including 60 days from the date the Mail Notice is issued to exclude themselves from the Settlement. *See* **Ex. A** at § II.19. The Mail Notice shall also direct recipients to the Settlement Website, which will provide Settlement Class Members with 24-hour access to additional information about the case, including important

court documents and a detailed "long form" Notice document ("Website Notice"). *See* **Ex. A** (Agreement) at § VI.56.A-B; *see also* **Ex. C** (Mail Notice); **Ex. D** (Website Notice).

Finally, Plaintiff's discovery efforts to date, including the third-party subpoenas issued to Graphic Packaging's vendors following the execution of the Agreement, have yielded full names and addresses for 93% of the Settlement Class, which is more than sufficient to satisfy Due Process. *See, e.g., Kaufman v. Am. Express Travel Related Servs. Co., Inc.,* 877 F.3d 276, 287 (7th Cir. 2017) ("[N]otice was provided to this massive class in a reasonable and effective manner, reaching approximately 70% of the members."); *Wortman v. Yang (In re Transpacific Passenger Air Transportation Antitrust Litigation)*, 701 F. App'x 554, 556 (9th Cir. 2017) (due process satisfied where notice plan reached 80% of class members in the U.S., and at least 70% living abroad); *In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) (holding notice plan designed to reach 80% of settlement class was "well within an acceptable range for class actions").

Accordingly, the proposed Notice Plan passes muster and should be approved.

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the  Settlement Class and appoint Plaintiff as class representative; (3) appoint his attorneys, Keith J. Keogh and Gregg M. Barbakoff of Keogh Law, Ltd. as Class Counsel; (4) approve the proposed Notice Program, to be administered by ALCS; (5) direct that Notice be provided to the  Settlement Class pursuant to the terms of the  Agreement; (6) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Class; (7) set a deadline after the Notice Deadline, after which no one shall be allowed to object

to the Settlement, exclude himself or herself from the Settlement Class, or seek to intervene; (8) schedule a hearing to consider final approval of the Settlement and set the following schedule as set forth in the draft Preliminary Approval Order attached as **Exhibit E**, which provides the following schedule:

| | |
|---|---|
| **_____,** **2024** [14 days after the date of this Order] | Deadline for the Settlement Administrator to send notice to the Settlement Class in accordance with the Agreement and this Order (Notice Deadline) |
| **_____,** **2024** [Same as Notice Deadline] | Deadline for Plaintiff to file his Motion for Attorneys' Fees and Expenses, and any Incentive Award |
| **_____,** **2024** [60 days after Notice Deadline] | Deadline for any member of the Settlement Class to request exclusion from the Settlement or object to the Settlement in accordance with the Notice and this Order (Opt-Out and Objection Deadline) |
| **_____,** **2024** [21 days after the Opt-Out, Objection, and Claim Deadline] | Deadline for Plaintiff to file: <br> (1) Motion and memorandum in support of final approval, including proof of class notice; and <br> (2) Response to any objections. |
| **_____, 2024 at** **_____ _.m.** [Court's Convenience] | Final Approval Hearing |
| | |

203789

Dated: January 19, 2024                    Respectfully submitted,

                                             **JOCELYN ROBERTS, individually and on behalf of
all others similarly situated,**

                                             By:  /s/ Gregg M. Barbakoff
                                               Keith J. Keogh (ARDC 6257811)
                                               Gregg M. Barbakoff (ARDC 6305413)
                                               KEOGH LAW, LTD.
                                             55 W. Monroe St., Suite 3390
                                             Chicago, Illinois 60603
                                             Tel.: (312) 726-1092
                                             Fax: (312) 726-1093
                                             keith@keoghlaw.com
                                             gbarbakoff@keoghlaw.com

                                            *Attorney for Plaintiff and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on **January 19, 2024**, I caused a copy of the foregoing document, along with any attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.

<u>  /s/ Gregg M. Barbakoff    </u>