**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| JOCELYN ROBERTS, individually and on behalf of all others similarly situated, | ) ) ) |
| *Plaintiff,* | ) ) Case No. 3:21-cv-00750 |
| v. | ) ) Hon. David W. Dugan |
| GRAPHIC PACKAGING INTERNATIONAL, LLC | ) Presiding Judge ) ) |
| *Defendant.* | ) ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

215427

<u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................... 1

II.     RELEVANT BACKGROUND .................................................................................. 2

        A.      The Biometric Information Privacy Act ........................................................ 2

        B.      Plaintiff's allegations ..................................................................................... 3

        C.      Procedural History ......................................................................................... 4

        D.      The proposed Settlement................................................................................. 5

                1.      The Settlement Class .......................................................................... 5

                2.      Monetary relief for Settlement Class Members ................................ 6

                3.      *Cy pres* distributions ......................................................................... 6

                4.      Settlement Class release...................................................................... 6

                5.      Class Representative Service Award ................................................... 7

                6.      Attorneys' fees and costs .................................................................... 7

II.     ARGUMENT ............................................................................................................. 8

        A.      The settlement approval process.................................................................... 8

        B.      The Settlement is Fair, Reasonable, Adequate, and Should be Approved ........... 9

                1.      The Class has been adequately represented ..................................... 10

                2.      The Settlement resulted from arm's length negotiations ................. 11

                3.      The proposed Settlement treats Settlement Class Members equally ....... 12

                4.      The relief provided to the Settlement Class is more than adequate ......... 12

                        a.      The risks of continued litigation favor approval.......................... 13

                        b.      The proposed method of distribution is effective ....................... 15

                        c.      The proposed attorney fee award and timing of payment
                                support approval............................................................................ 16

IV.     CONCLUSION......................................................................................................... 18

## **TABLE OF AUTHORITIES**

### **Cases**

*Aranda v. Caribbean Cruise Line, Inc.,*
  No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017) .................................. 11

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ...................................................................................... 8

*Beesley v. Int'l Paper Co.,*
  2014 U.S. Dist. LEXIS 12037 ...................................................................................... 18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) ................................................................................... 7, 16

*Braver v Northstar,*
  17-cv-00383-F (D. Ok 2020) ...................................................................................... 14

*Burlinski, et. al v. TopGolf USA, Inc., et. al,*
  Case No. 1:19-cv-06700, ECF No. 103 (N.D. Ill. Octo. 13, 2021) ........................................... 12

*Chambers v. Together Credit Union,*
  No. 19-CV-00842-SPM, 2021 U.S. Dist. LEXIS 92150 (S.D. Ill. May 14, 2021) .................. 15

*Cothron v. White Castle Sys.,*
  2023 IL 128004 .............................................................................................................. 4, 15

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ...................................................................................... 8

*Fournigault v. Independence One Mortgage Corp.*,
  234 F.R.D. 641 (N.D. Ill. 2006) ...................................................................................... 10

*Gaskill v. Gordon,*
  942 F. Supp. 382 (N.D. Ill. 1996) ...................................................................................... 17

*Gebka v. Allstate Corp.,*
  Case No. 19cv6662, ECF No. 145 (N.D. Ill. Sep. 27, 2022) .................................................... 17

*Goldsmith v. Technology Solutions Co.,*
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) ............................. 8, 15

*Guzman v. National Packaging Services Corp.,*
  No. 19-cv-1722-pp, 2022 U.S. Dist. LEXIS 120514 (E.D. Wis. July 8, 2022) ....................... 17

*Hale v. State Farm Mut. Auto. Ins. Co.*,
 No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018).................. 16, 18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010)................................................................................ 14

*In re Southwest Airlines Voucher Litig.*,
 No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Dec. 6, 2013)............................................. 2, 14

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
 728 F.3d 682 (7th Cir. 2013) ................................................................................... 6

*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996) ................................................................................... 8

*Johnson v Yahoo!, Inc.*,
 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) .................................................. 14

*Jones v. CBC Rest. Corp.*,
 1:19-cv-06736 (N.D. Ill. Oct. 22, 2020) ..................................................................... 13

*Kirchoff v. Flynn*,
 786 F.2d 320 (7th Cir. 1986) ................................................................................... 17

*Kusinski v. ADP, LLC*,
 No. 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) ......................................................... 13

*Legg v. PTZ  Ins. Agency, Ltd, et al.*,
 No. 14-cv-10043, ECF No. 469 (N.D. Ill. Oct. 31, 2019) ............................................... 17

*Martinez v. Nando's Rest. Grp., Inc.*,
 No. 19-cv-07012, ECF No. 63 (N.D. Ill. Oct. 27, 2020) ................................................. 13

*McAfee v. Hubbard*,
 No. 14-CV-1010-NJR-RJD, 2017 U.S. Dist. LEXIS 62676 (S.D. Ill. Apr. 25, 2017)............. 16

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999)............................................................................................. 13

*O'Sullivan, et al. v. WAM Holdings, Inc., d/b/a All Star Management, Inc.*,
 No. 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) ............................................... 12

*Pelka v. Saren Restaurants Inc.*,
 No. 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) ................................................ 13

iii

*Quarles v. Pret a Manger,*
   Case No. 20-cv-7179, ECF No. 52 (N.D. Ill. May 5, 2022) ..................................................... 12

*Rapai v. Hyatt Corp.,*
   No. 2017-CH-14483 (Cir. Ct. Cook Cty. Jan. 26, 2022) ......................................................... 18

*Rogers v. BNSF Ry. Co.,*
   2023 U.S. Dist. LEXIS 113278 (N.D. Ill. June 30, 2023) ....................................................... 15

*Rysewyk v. Sears Holdings Corp.,*
   Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004
   (N.D. Ill. Jan. 29, 2019) ........................................................................................................... 9

*Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company,*
   No. 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) ...................................................... 13

*Schulte v. Fifth Third Bank,*
   No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010) ......................... 13

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................. 12, 15

*Sherman v. Brandt Industries USA Ltd.,*
   No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) .................................. 16

*Snyder v. Ocwen Loan Servicing, LLC,*
   No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ................................ 11

*Spano v. Boeing Co.,*
   No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078(S.D. Ill. Mar. 31, 2016) ........... 18

*Will v. General Dynamics Corp.,*
   No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ......................... 18

*Wong v. Accretive Health, Inc.,*
   773 F.3d 859 (7th Cir. 2014) .................................................................................................... 9

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment ........................ 15, 16

## **Statutes**

740 ILCS 14/1, *et seq.*............................................................................................................ passim

## Treatises

4 Newberg on Class Actions (4th ed. 2002) ................................................................. 8

4 Newberg on Class Actions  (5th ed.) ..................................................................... 15

*Manual for Complex Litigation* (4th ed. 2004) ......................................................... 9

## Other Authorities

Illinois House Transcript, 2008 Reg. Sess. No. 276 (May 30, 2008) ............................................. 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jocelyn Roberts respectfully moves the Court for final approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant Graphic Packaging International, LLC ("Graphic Packaging") (collectively, the "Parties") attached as **Exhibit 1.**

Roberts alleges Graphic Packaging violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting the Class's hand geometry without complying with the statute's informed consent regime or adhering to a publicly-available policy governing the retention and destruction of this highly-sensitive data.

The Settlement provides $997,808.22 in a non-reversionary fund for 603 individuals. If approved, each Class Member will receive an equal, *pro-rata* distribution without the need to have filed a claim or take any other action. Plaintiff estimates[1] every class member would receive $1,018.06[2] — one of the largest per-class member recoveries of any BIPA settlement to date.

On February 6, 2024, the Court granted preliminary approval of the Settlement, finding the settlement within the range of reasonableness, and thus the class should be given notice of the Settlement and an opportunity to object or opt out. ECF No. 54.

Per the Court-approved notice plan, direct individual notice was disseminated via mail to 565 Settlement Class Members (*i.e.* 93.6% of the Settlement Class), as the Parties were unable to

---

[1] Graphic Packaging's vendors provided supplemental data that increased the Settlement Class members to 603. *See* Declaration of Keith J. Keogh ("Keogh Decl."), ¶ 18 attached as **Exhibit 2.**  The Settlement requires a *pro rata* increase for each additional class member, which increased the Settlement Fund from $992,844.00 to $997,808.22 ($1,654.74 x 603). *see* **Ex. 1** (Agreement), at § V.50.  This ensured there is no prejudiced by any increase in the class.

[2] The estimate is based on a pro-rata distribution after deduction of $13,070.00 for administration, $10,000 for incentive award, $354,505.76 for fees and $9,397.31 in reimbursed expenses, subject to Court approval.

1

obtain full names and addresses for 38 Settlement Class Members. *See* **Exhibit 3**, Declaration of Mark Unkefer ("Unkefer Decl.") at ¶¶ 3-5.

The notice advised the class of the terms of the settlement as well as the exact amount in both a percentage and dollar amount of the requested attorney fee as well as the requested incentive award.  Along that line, Plaintiff filed his motion for attorney fees and incentive (ECF. No. 56), which were posted to the settlement website for class members to review the day that notice was mailed. *See* https://www.GPIBIPAsettlement.com/page/docs (last visited May 3, 2024).

No class members excluded themselves or objected to any portion of the Settlement.  *See* **Ex. 3** (Unkefer Decl.) at ¶¶ 7-8. This complete absence of objections points to the reasonableness of the Settlement.   *See In re Southwest Airlines Voucher Litig*., No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding even "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, is a great result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of these claims.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## II.     RELEVANT BACKGROUND

### A.  The Biometric Information Privacy Act.

 The growing use of biometric data in commercial transactions implicates unique privacy concerns. Unlike other forms of personally-identifiable information, biometric information such as fingerprints cannot be changed when stolen. Recognizing the "very serious need of protections for the citizens of Illinois when it comes to biometric information," the legislature passed BIPA in

2

2008 to provide heightened protections for biometric privacy rights. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g).

As relevant to this case, Section 15(b) prohibits an employer from collecting its employee's biometric information without first: (1) providing the employee with a written disclosure explaining that biometric information is being collected, the reason for the collection, and the length of time for which the biometric information will be retained; and (2) obtaining a signed written release from the employee authorizing the collection. 740 ILCS 14/15(b).

Section 15(a) of BIPA requires an employer to destroy the biometric information once the purpose for which it was collected has been satisfied. *See* 740 ILCS 14/15(a).

### B. Plaintiff's allegations.

Graphic Packaging utilized a biometric device at the Centralia Facility known as the "Hand Punch 4000," which, according to the manufacturer, is part of its third generation line of "biometric hand geometry time and attendance terminals." The Hand Punch 4000 scans the user's hand geometry and compares it against a previously saved scan to verify his or her identity. Aside from tracking employee time and attendance, the Hand Punch 4000 can also be hardwired to a door to serve as an "access device," so that anyone seeking entry must verify his or her identity through the device's hand scanner.  Graphic Packaging implemented several Hand Punch 4000 terminals at the Centralia Facility, two of which were used as access devices to restrict access to the building.

Plaintiff alleged Graphic Packaging's systematic collection and storage of the Settlement Class's highly-sensitive biometric data violated BIPA in two discrete ways.  First, Plaintiff alleges Graphic Packaging violated Section 15(a) by failing to implement and adhere to a publicly-available policy governing the retention and destruction of the biometric data in its possession. *See* Compl. at ¶¶ 26, 36-37, 48-57. Second, Plaintiff alleges Graphic Packaging violated Section 15(b)

3

by collecting, storing, and using the Settlement Class's biometric data without first providing the necessary disclosures or receiving informed written consent. *Id.* at ¶¶ 24-25, 32-35, 58-68.

### C. Procedural History.

On June 29, 2021, Plaintiff commenced this action on behalf of the class. On July 22, 2021, Graphic Packaging moved to stay this case pending the Illinois Appellate Court's resolution of *Tims v. Black Horse Carriers, Inc.* and *Marion v. Ring Container Technologies, LLC*, as well as the Seventh Circuit's resolution of *Cothron v. White Castle Sys.* *See* ECF No. 10. On August 17, 2021, the Court granted Graphic Packaging's motion and stayed the case. *See* ECF No. 17.

On March 6, 2023, the Court lifted the stay and entered a scheduling order. *See* ECF Nos. 29, 31. On April 4, 2023, Defendant filed its answer and affirmative defenses. *See* ECF No. 33.

The Parties subsequently served interrogatories and requests to produce, exchanged written discovery responses, and produced responsive documents. The Parties' discovery efforts were adversarial, resulting in several Rule 37 conferences over the ensuing weeks and multiple rounds of amended responses. *See* **Ex. 2** (Keogh Decl.), ¶ 10.

While the Parties' discovery disputes continued, Plaintiff was simultaneously engaging in third-party discovery with the vendor who provided the timekeeping/access device at issue (the "Hand Punch 4000"). *Id.*, ¶ 11. After multiple Rule 37 conferences with vendor's counsel, Plaintiff obtained the data needed to identify the company that manufactured the Hand Punch 4000's hand-scanning feature. *Id.* Shortly thereafter, Plaintiff issued another round of third-party subpoenas to the manufacturer, and on July 26, 2023, deposed the manufacturer's corporate representative regarding the type of data captured by the hand-scanner. *Id.*, ¶ 12.

With third-party discovery largely complete, and the remaining discovery disputes largely resolved, the Parties resumed discussing scheduling the depositions of Graphic Packaging's

corporate representative and IT director.  *Id.*, at ¶ 13. At the same time, Parties revisited the topic of mediation and subsequently agreed to mediate the dispute in person on September 18, 2023 before the Honorable Thomas Rakowski (Ret.) of JAMS. *Id.*

Over the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases. *Id.*, ¶ 14. The parties attended the mediation in person and discussed their relative views of the law and the facts and potential relief for the proposed Class. *Id.*, ¶ 15.  With the assistance of Judge Rakowski, the Parties reached an agreement-in-principle on the material terms of a class-wide settlement. *Id.*

Following the mediation, the Parties continued extensive negotiations on their remaining points of dispute, which ultimately culminated in the Settlement Agreement.  *Id.*, ¶ 16.

Following the execution of the Settlement, the Parties turned to the task of obtaining full names and addresses for the Settlement Class Members to send direct notice, which required Plaintiff to issue seven separate subpoenas to identify (1) roughly 206 temporary employees provided by two separate staffing companies for whom Graphic Packaging lacked these data points; and (2) approximately 40 employees of vendors who were required to use the Hand Punch 4000 to enter Graphic Packaging's Centralia Facility.  Through these efforts, Plaintiff obtained full names and addresses or roughly 93% of the Settlement Class.

**D.  The proposed Settlement.**

The following summarizes the Agreement's terms:

**1.   The Settlement Class.**

The Settlement Class preliminarily approved by the Court is defined as:

The 600 individuals identified who used a Hand Punch 4000 terminal at Defendant's Centralia, Illinois facility between June 29, 2016 and September 1, 2021.

5

### 2.   Monetary relief for Settlement Class Members.

The Settlement requires a non-reversionary Settlement Fund of $997,808.22 from which each Settlement Class Member will receive a *pro rata* portion after payment of Settlement Administration Expenses, attorney's fees and costs, and any incentive award approved by the Court. *See* **Ex. 1** (Agreement) at §§ II.36, V.49, V.50, X.65.

No amount of the Settlement Fund will revert to Graphic Packaging, and Settlement Class Members are not required take any action to receive compensation. Instead, the Settlement Administrator will automatically issue checks to each Settlement Class Member who declines to opt out. *Id.* at §§ II.6, X.64**.** If after the 90 day expiration date of the checks, there remains money sufficient to pay at least five dollars to each Settlement Class Member who cashed their check, those funds will be distributed on a *pro rata* to them (the "Second Distribution"). *Id*. at § X.65.

### 3.   Cy pres distributions.

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, Plaintiff suggested any such funds be sent to the Electronic Privacy Information Center as that organization is closely related to the privacy issues of this BIPA class. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (Cy pres must directly or indirectly benefit the class members' interests.). The full class notice identified this organization and no Settlement Class member objected. *See* Website Notice, available at https://www.gpibipasettlement.com/page/docs (last visited May 13, 2024); *see also* **Ex. 3** (Unkefer Decl.), ¶ 8.

### 4.   Settlement Class release.

Settlement Class Members will provide a release tailored to the practices at issue in this case. Specifically, they will release all "claims for statutory damages under the [BIPA], 740 ILCS

14/1 *et seq.*, or regarding the use, collection, capture, receipt, maintenance, storage, transmission, or disclosure of biometric identifiers that Settlement Class members claim, might claim, or could have claimed in any court or administrative proceeding, for all periods up to and including the date of Final Approval (the "Released Claims")." **Ex. 1** (Agreement) at § XI.66.

### 5. Class Representative Service Award.

The Agreement provided Plaintiff may petition the Court for a Service Award. **Ex. 1** (Agreement) at § V.53.  There is no clear sailing provision as to this request, and neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id*. Given Plaintiff's role in prosecuting this action on behalf of the Settlement Class, Plaintiff has requested a Service Award of $10,000.00. ECF. No. 56 at 14-16. The Class Notice advised the Settlement Class of Plaintiff's request and there was no objection. **Ex. 3** (Unkefer Decl.) at ¶ 8; *id.* at **Exhibit A**.

### 6. Attorneys' fees and costs.

Class Counsel has applied to the Court for an award of attorneys' fees and costs. *See* ECF Nos. 56. As addressed in Class Counsel's motion for attorneys' fees, courts in this Circuit commonly award approximately 36% plus reasonable expenses in common fund class settlements after settlement administration costs are deducted. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in consumer statutory class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class.

There was no clear sailing agreement on attorney fees and the Class Notice informed the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs and the exact dollar amount that equaled. *See* **Ex. 3** (Unkefer Decl.) at **Ex. A** (Class Notice), p. 1

("Plaintiff will petition for … Class Counsel's fees up to thirty-six percent of the settlement fund, not to exceed $354,505.76, plus reasonable expenses.").  There were no objections to this request.

## II.    ARGUMENT

### A.  The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is a presumption of fairness when a class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public

8

and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

The first two steps in this process have occurred. With this motion, Plaintiff respectfully requests the Court take the third and final step in granting final approval.

**B. The Settlement is Fair, Reasonable, Adequate, and Should be Approved.**

When deciding whether to grant final approval, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2).[3] Each of these factors supports approval.

---

[3] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

**1. The Class has been adequately represented.**

The first factor analyzes whether plaintiff and class counsel have adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class he seeks to represent. Plaintiff and the other Settlement Class Members are all individuals who used the Hand Punch 4000 and share identical claims arising from a common course of conduct: Graphic Packaging's allegedly unlawful collection and retention of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the class by retaining counsel, assisting his attorneys in investigating the Settlement Class's BIPA claims, answering interrogatories and producing responsive documents, reviewing and approving the Class Action Complaint prior to filing, regularly conferring with his attorneys throughout the litigation, and reviewing and approving the Agreement. *See* **Ex. 2** (Keogh Decl.) at ¶ 25.

Further, Class Counsel have extensive experience in complex litigation and consumer class actions involving BIPA as well as other statutory privacy claims, and have been found adequate and appointed class counsel in BIPA disputes and scores of cases arising under various other consumer protection statutes. *See id.* at ¶¶ 3-9. Drawing on this experience, Class Counsel were able to evaluate the merits of this case, Graphic Packaging's defenses, the benefits of the proposed Settlement, and the risks of further litigation. *Id.* at ¶¶ 19-23.

Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, briefing a motion to stay,

10

obtaining written and oral discovery on merits and class issues, conducting third-party discovery to obtain information about the data captured by the Hand Punch 4000 and to identify the Settlement Class, and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *See id.* at ¶¶ 10-14. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claims form or other paperwork. As such, the Court should find the adequacy prong met.

### 2.   The Settlement resulted from arm's length negotiations.

The second 23(e)(2) factor is satisfied as the Settlement is the result of extensive, arm's length negotiations between experienced attorneys, carried out during an all-day mediation session held before Judge Rakowski (Ret). *See* **Ex. 2** (Keogh Decl.) at ¶¶ 3-9, 15, 19. After reaching an agreement in principal with the assistance of Judge Rakowski, the Parties next negotiatated the details of the Agreement before executing it in October 2023.  *Id.* at ¶ 16.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Settlement Agreement itself. The Settlement Agreement is non-reversionary, automatically provides significant cash payments to all members of the Settlement Class and lacks any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement lacked reversion clause, clear sailing clause, or other terms that suggest "something other than an arm's length negotiation");  *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same). It also provides for an increase in the amount if additional class members are identified, which happened here.

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting courts "presume the absence of fraud or collusion" absent evidence to contrary).

### 3.  The proposed Settlement treats Settlement Class Members equally.

The next Rule 23(e)(2) consideration supports approval where the proposed settlement treats all class members the same. Here, each Settlement Class Member has identical BIPA claims against Defendant, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member is entitled to an equal, *pro rata* share of the Settlement Fund. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). Because there is no disparate treatment between members, the Settlement merits approval.

### 4.  The relief provided to the Settlement Class is more than adequate.

The next — if not most critical — Rule 23(e)(2) factor focuses whether the relief provided for the class is adequate. Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, the gross recovery of $1,654/net recovery of $1,018 afforded by the Settlement greatly exceeds the per-claimant recoveries obtained in analogous BIPA class actions that have received court approval. *See, e.g. Quarles v. Pret a Manger,* Case No. 20-cv-7179, ECF No. 52 (N.D. Ill. May 5, 2022) (approving settlement providing net recovery of approximately $518); *Burlinski, et. al v. TopGolf USA, Inc., et. al,* Case No. 1:19-cv-06700, ECF No. 103 (N.D. Ill. Octo. 13, 2021) (net recovery of approximately $630 per class member); *O'Sullivan, et al. v. WAM*

*Holdings, Inc., d/b/a All Star Management, Inc.*, No. 2019-CH-11575 (Cir. Ct. Cook Cnty. Sept. 2, 2021) (net recovery of $384.09); *Sanchez v. Elite Labor Services d/b/a Elite Staffing, Inc. and Visual Pak Company*, No. 2018-CH-02651 (Cir. Ct. Cook Cnty. Aug. 10, 2021) (net recovery of $256-$510); *Martinez v. Nando's Rest. Grp., Inc.*, No. 19-cv-07012, ECF No. 63 (N.D. Ill. Oct. 27, 2020) (net recovery of approximately $652 per class member).[4]

In sum, the relief provided by the proposed Settlement is more than adequate when compared against comparable results.

### a. The risks of continued litigation favor approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation and appeals.

While Plaintiff remains confident in the strength of his claims, Graphic Packaging denied all of his material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Class. For starters, Graphic Packaging intended to argue it has no liability under BIPA because the information captured by Hand Punch 4000's hand-scanner does not fall within the statutory definition of "biometric identifiers" or "biometric information," but instead falls within a third category outside of BIPA's purview. *See* ECF No. 33 at 23.

---

[4] *See also Jones v. CBC Rest. Corp.,* 1:19-cv-06736, ECF No. 53 (N.D. Ill. Oct. 22, 2020) (net recovery of approximately $528.70 per class member); *Pelka v. Saren Restaurants Inc.*, No. 2019-CH-14664 (Cir. Ct. Cook Cnty. Apr. 9, 2021) (net recovery of $289 per claimant); *Kusinski v. ADP, LLC*, No. 2017-CH-12364 (Cook Cnty. Feb. 10, 2021) (net recovery of $250 per claimant).

Defeating this technical defense would entail costly expert and third-party discovery. While Plaintiff is confident he would prevail, the lack of any precedent offers no guarantee of success.

In addition, Graphic Packaging planned to avoid liability by proving, among other issues, that: (1) Plaintiff's and the Settlement Class's claims are barred by the applicable statute of limitations; (2) Graphic Packaging is not subject to BIPA because it satisfies the statutory exemption for governmental contractors; and (3) Plaintiff and the Settlement Class consented to the collection, use, and storage of their biometric data. *See* ECF No. 33 at 23-24. A victory on these defenses could doom the case in its entirety or at least reduce the size of the proposed class. These risks posed by continued litigation support settlement. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

Plaintiff would also need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is an ideal candidate for certification, his success is certainly not guaranteed.[5]

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Graphic Packaging could seek a reduction of damages based on the argument an award

---

[5] Class actions are inherently risky. For example, in another case Class Counsel was involved in, the class was decertified two years after certification, and after notice had been sent to the Class, which resulted in Class Counsel incurring hundreds of thousands of dollars in notice costs, plus the additional cost to send notice of the decertification. *See Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) (order decertifying class after notice). Similarly, in *Braver v Northstar*, 17-cv-00383-F (D. Ok 2020), a co-defendant filed for bankruptcy after class certification, notice to class, and judgment.

of $1,000 or $5,000 per violation would violate its right to due process under the Illinois and United States Constitution. *See Cothron v. White Castle Sys.,* 2023 IL 128004, ¶ 42; *see also Rogers v. BNSF Ry. Co.,* 2023 U.S. Dist. LEXIS 113278, *30 (N.D. Ill. June 30, 2023) (vacating damage award and ordering new jury trial limited to damages).[6]

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *14-15 ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring "only legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Courts routinely find this factor satisfied where class members do not need to take any affirmative steps to receive their portion of the settlement. *See, e.g., Chambers v. Together Credit*

---

[6] Plaintiff respectfully disagrees damages should be left to the discretion of the jury as *Rogers* found, but instead subject to a Due Process analysis after judgment.

15

*Union,* No. 19-CV-00842-SPM, 2021 U.S. Dist. LEXIS 92150, at *6-7 (S.D. Ill. May 14, 2021) ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted.").

The same result is warranted here. Settlement Class Members do not need to take any action to obtain their share of the class award. Instead, the Administrator will distribute each *pro rata* share of the Settlement Fund to them. This method of distribution supports final approval.

### c. The proposed attorney fee award and timing of payment support approval.

The final sub-factor[7] analyzes the adequacy of the relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee or clear sailing provisions. Instead, Class Counsel has filed a fee petition requesting the Court to approve a fee award of 36% of the Settlement Fund (excluding Administrative Expenses) — an amount Illinois and courts within the Seventh Circuit routinely award. *See Birchmeier supra at* 796-97 (7th Cir. 2018) (affirming attorney fees in consumer statutory class action of 36% of the first $10 million.) *Sherman v. Brandt Industries USA Ltd.*, No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) (Mihm, J.) (awarding fee award of 36% of net common fund in BIPA dispute); *McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 U.S. Dist. LEXIS 62676, at *11 (S.D. Ill. Apr. 25, 2017) (approving

---

[7] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv); *id.* at § (e)(3). Because the Parties have reached no such agreement, *see* **Ex. 2** (Keogh Decl.) at ¶ 20, this factor does not factor into the analysis. *See, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

fee award of approximately 36% of total settlement fund); *Gaskill*, 160 F.3d at 362–63 (affirming award of 38%); *Kirchoff*, 786 F.2d at 323 (observing "40% is the customary fee in tort litigation").[8]

Regarding timing, Class Counsel filed their application on the date Notice was sent, which was immediately posted on the Settlement Website allowing Class Members to review or object. Further, the Notice mailed to the class advised the class of the exact amount of fees sought both as a percentage and dollar amount. *See* **Ex. 3** (Unkefer Decl.) at **Ex. A,** p.1  ("Plaintiff will petition for … Class Counsel's fees up to thirty-six percent of the settlement fund, not to exceed $354,505.78 plus reasonable expenses.).  No class member has objected to the requested fees.

Similarly, Plaintiff has petitioned for a $10,000 service award for his role in this litigation, which was crucial. Though no award of any sort was promised to Plaintiff at any time, he nevertheless sacrificed his time to prosecute this case on behalf of the class who used Graphic Packaging's Hand Punch 4000, exhibiting a willingness to participate in this case and undertake the responsibilities and risks attendant to bringing a class action. *See* **Ex. 2** (Keogh Decl.) at ¶ 25. Plaintiff participated in the initial investigation of his claims, provided information to Class Counsel to aid in preparing the initial pleadings, and reviewed the initial pleadings prior to filing. *Id*. During discovery, Plaintiff spent considerable time assisting Class Counsel in responding to Graphic Packaging's discovery requests, which entailed searching for responsive documents, consulting in the preparation of the interrogatory responses, and reviewing and approving the draft responses.  *Id.* In addition, Plaintiff regularly consulted with Class Counsel, and analyzed and approved the Settlement. *Id*.

---

[8] *See Guzman v. National Packaging Services Corp.*, No. 19-cv-1722-pp, 2022 U.S. Dist. LEXIS 120514, at *14-15 (E.D. Wis. July 8, 2022) (36% in FLSA action); *Legg v. PTZ  Ins. Agency, Ltd, et al.*, No. 14-cv-10043, ECF No. 469 (N.D. Ill. Oct. 31, 2019) (same, in TCPA action); *Gebka v. Allstate Corp.*, Case No. 19cv6662, ECF No. 145 (N.D. Ill. Sep. 27, 2022) (same);

Moreover, the $10,000 Service Award sought here is comparable to or less than others approved by Illinois state and federal courts in similar BIPA or class actions. *See, e.g., Hale,* 2018 U.S. Dist. LEXIS 210368, at *50 (S.D. Ill. Dec. 13, 2018) (awarding $25,000 incentive award in settlement involving RICO and unjust enrichment claims);[9] Once again, no class member objected to this request and the requested service award of $10,000 is reasonable.

Thus, the fees and expenses sought are fair, reasonable and support approval.

## IV.   CONCLUSION

This Settlement provides substantial benefits for all Settlement Class Members without the need to submit a claim, it was negotiated at arm's length by experienced counsel after sufficient discovery and litigation, and there are no objections to any portion of the Settlement.  Thus, it easily falls within the range of possible approval.

For all of the foregoing reasons, Plaintiff respectfully requests the Court: (1) grant the Settlement final approval; (2) grant Class Counsel's request for an award of attorneys' fees equal to $354,505.76, which represents thirty-six percent of the Settlement after administration costs are deducted, plus $9,397.31 in out-of-pocket expenses they incurred litigating the case for the class; and (3) grant Plaintiff a class representative service award in the amount of $10,000. The draft order for Final Approval attached to the Settlement Agreement is also attached as **Exhibit 4.**

---

[9] *Rapai v. Hyatt Corp.*, No. 2017-CH-14483 (Cir. Ct. Cook Cty. Jan. 26, 2022) (awarding $12,500 incentive award to BIPA class representative); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078, at *13 (S.D. Ill. Mar. 31, 2016) (awarding $25,000 to two class representatives and $10,000 to a third in ERISA settlement); *Beesley*, 2014 U.S. Dist. LEXIS 12037, at *13 (awarding $25,000 and $15,000 in ERISA settlement); *Will v. General Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs in ERISA settlement).

Dated: May 13, 2024

Respectfully submitted,

**JOCELYN ROBERTS, individually and on behalf of all others similarly situated,**

By: _/s/ Gregg M. Barbakoff_
    Keith J. Keogh (ARDC 6257811)
    Gregg M. Barbakoff (ARDC 6305413)
    KEOGH LAW, LTD.
    55 W. Monroe St., Suite 3390
    Chicago, Illinois 60603
    Tel.: (312) 726-1092
    Fax: (312) 726-1093
    keith@keoghlaw.com
    gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Settlement Class*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on **May 13, 2024**, I caused a copy of the foregoing document, along with any attached exhibits, to be served upon all counsel of record via electronic filing using the CM/ECF system.


 /s/ Gregg M. Barbakoff