IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JOCELYN ROBERTS, *individually and on behalf of all others similarly situated,* | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 3:21-cv-00750-DWD |
| v. | )<br>) |
| GRAPHIC PACKAGING INTERNATIONAL, LLC | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

On June 19, 2021 Plaintiff Jocelyn Roberts filed this putative class action against Defendant Graphic Packaging International, LLC, for alleged violations of the Illinois Biometric Privacy Act, 40 ILCS § 14/1, et. seq. On February 6, 2024, the Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Doc. 54). The Court held a Final Fairness Hearing on July 9, 2024. Now before the Court are two Motions filed by Plaintiff: (1) a Motion for Final Approval of Class Action Settlement[1] (Doc. 58); and (2) a Motion for Attorneys' Fees, Costs, and Service Award (Doc. 56). No opposition brief or objections to either Motion have been filed. No class member has opted out of the Settlement. Having read and considered all submissions made in

---

[1] Plaintiff filed this document as "Memorandum in Support of Motion of Final Approval of Class Action Settlement." However, the Memorandum erroneously referred back to Plaintiff's Motion for *Preliminary* Approval of Class Action Settlement (Doc. 50) as the motion for "final approval." For the sake of clarity, the Court refers to the Memorandum in Support (Doc. 58) as the Motion for Final Approval.

1

connection with the Settlement Agreement, including statements and arguments made at the Final Fairness hearing, the Court **GRANTS** the Motions.

## Background

BIPA regulates private entities' "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS § 14/15(d)-(g). Biometric data includes "biologically unique" personal identifiers such as iris scans, facial geometry, and, most relevant here, handprints. 740 ILCS § 14/10; *see also Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1159 (7th Cir. 2021), *certified question answered*, 2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023). Biometric data, unlike other sensitive personal information, cannot be changed if compromised. 740 ILCS § 14/5(c); *see also Cothron*, 20 F.4th at 1159. Section 15(b) of BIPA requires private entities to obtain informed written consent from a person prior to the collection, capture, or otherwise possession of that person's biometric information. 740 ILCS § 15/15(b); *see also Miller v. Sw. Airlines Co.*, 926 F.3d 898, 900 (7th Cir. 2019) (quoting 740 ILCS § 14/15(b)). Section 15(a) requires private entities in possession of such biometric identifiers or information to develop a publicly-available written policy surrounding the retention schedule and guidelines for the permanent destruction of the biometric data "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever comes first." 740 ILCS § 15/15(a). BIPA creates a private right of action so that a person aggrieved by a violation of the Act may

recover $1,000 in damages for each negligent violation or $5,000 for each reckless or willful violation. 740 ILCS at § 14/20.

In Plaintiff's case, he alleges Defendant collected, stored, and used his handprint while he was employed by a janitorial service company at Defendant's Centralia, Illinois facility until July 2016 (Doc. 1, pp. 6-7)). Plaintiff claims he was required to clock in and out of each shift by "scanning his handprint into Defendant's biometric timekeeping system." (Doc. 1, p. 3). According to Plaintiff, once his handprint was scanned, Defendant's handprint matching technology compared it with the handprint previously stored in Defendant's database (Doc. 1, p. 7). Plaintiff alleges that Defendant violated BIPA because Plaintiff never gave written consent to Defendant for the collection or storage of his biometric data, and because Defendant did not provide the requisite statutory disclosures, an opportunity to prohibit the collection or use of his biometric data, or a publicly-available retention schedule or guideline for permanently destroying his biometric data (Doc. 1, p. 7). For these alleged violations, Plaintiff sought statutory damages, attorneys' fees and costs, litigation expenses, pre- and post-judgment interest, an Order requiring Defendant to comply with BIPA, and other injunctive relief as necessary (Doc. 1, p. 14).

### Final Approval of Class Action Settlement

**a. Proposed Settlement Agreement**

In exchange for a release of these claims, and other claims related to the collection and use of biometric identifiers, the Settlement Agreement provides for a non-reversionary Settlement Fund of $997,808.22 from which each Settlement Class

Member will receive a *pro rata* portion. (Doc. 58, pp. 7 n.1, 12, 13). Based on Plaintiff's estimates, after the deduction of litigation expenses, notice and administration costs, attorneys' fees, and the service award, each class member who does not opt-out will automatically receive a check for approximately $1,018.06 (Doc. 58, p. 7). In the event there are leftover funds after the first distribution sufficient to provide atleast $5 to each member of the Settlement Class who cashed their check, there will be a second distribution on a *pro rata* basis (Doc. 58, p. 12). If the second distribution is not feasible or there are funds remaining, the remaining funds will be donated to a *cy pres* beneficiary, which Plaintiff proposes should be the Electronic Privacy Information Center as that organization is closely related to the privacy aims of the Class (Doc. 58, p. 12).

### b. Order Granting Preliminary Approval

The Court made three principal findings in its order granting preliminary approval: "(a) the [Settlement] Agreement is fair, reasonable and adequate, and within the range of possible approval; (b) the Agreement has been negotiated in good faith at arm's length between experienced attorneys with the legal and factual issues of this case, and supervised by a well-qualified JAMS mediator, the Honorable Thomas Rakowski; and (c) the proposed forms and method of distributing notice of the Settlement to the Settlement Class are appropriate and warranted." (Doc. 54, p. 2). Accordingly, under Rule 23, the Court certified a class for the purposes of settlement consisting of 600 identified individuals who used a Hand Punch 4000 terminal at

Defendant's Centralia, Illinois facility between June 29, 2016 and September 1, 2021 (Doc. 54, p. 2). Fed. R. Civ. P. 23.

### c. Notice Program

The requirements of Rule 23 and due process do not dictate that each class member actually receive notice. Instead, Rule 23 requires the best notice practicable under the circumstances, provided in a reasonable manner to all class members. Fed. R. Civ. P. 23(c)(2)(B)-(e)(1)(B).

This Court previously approved the Class Notice Plan, which provides notice be given to the class via direct mail and the website GPIBIPAsettlement.com (Doc. 50-1, p. 8). To this end, Plaintiff's counsel indicates they obtained full names and addresses for approximately 93% of the settlement class (Doc. 58, p. 11). No class members then opted-out or objected to any portion of the Settlement (Doc. 58, p. 8). Based on these facts and pursuant to its preliminary approval order, the Court finds that class members were provided with the best notice practicable under the circumstances, the Notice fairly and adequately advised class members of the terms of the Settlement, and the Notice distribution process comported in all respects with Federal Rule of Civil Procedure 23 and due process.

### d. Rule 23(e)'s Fairness Inquiry

The Seventh Circuit has recognized the "overriding public interest in favor of settlements" in the class action context, as they "minimize[] the litigation expenses of both parties and also reduce[] the strain such litigation imposes on already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305,

5

312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); see also *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). The public interest in favor of settlement exists alongside the Court's role in approving class actions, which is akin to "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 933 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014)). This is due to the nature of sizeable class action settlements, which may provide incentives to class counsel and the defendant to promote their own self-interests at the expense of the class members. *Id.* (citing *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014)). Therefore, before approving the settlement, the Court must find that its terms are fair, reasonable, and adequate according to various factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)); *see* FED. R. CIV. P. 23(e)(2) (listing factors); *see also In re TikTok*, 617 F. Supp. 3d at 933. The Rule 23(e) analysis does not "focus on individual components of the settlement, but rather views it in its entirety in evaluating its

fairness." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). However, the Seventh Circuit has stated that the first factor, which requires the Court to balance the strength of the merits of Plaintiff's case against the extent of the value of the settlement, is most important. *Wong*, 773 F.3d at 863 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 n. 44 (7th Cir.1979).

In 2002, the Seventh Circuit advised in *Reynolds v. Beneficial National Bank* that Courts evaluating a settlement under this first factor should "quantify the net expected value of continued litigation" by "estimating the range of possible outcomes and ascribing a probability to each point on the range." 288 F.3d 277, 284–85 (7th Cir. 2002) (Posner, J.). However, in recent years, the Seventh Circuit has permitted less mathematical, formulaic inquiries where certain "indicia of trustworthiness" (*i.e.*, third-party mediation, extensive confirmatory discovery, and hard-fought, arm's length negotiation) guard against suspicion of the circumstances surrounding a settlement. *See In re TikTok*, 617 F. Supp. 3d at 934 (citing *Wong*, 773 F.3d at 864; *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 218–19 (N.D. Ill. 2019) *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019)); *c.f. Reynolds*, 288 F.3d at 284-85 (reasoning that under the "suspicious circumstances" of the settlement, the district court should have made an effort to quantify the net value of continued litigated to the class, since a settlement for less than that value would be inadequate). This "does not mean the Court will simply rubberstamp the settlement[;] [r]ather, the Court still must consider carefully the

7

benefits of the monetary . . . relief to the class[] against the risks and potential benefits of potential future litigation." *In re Tiktok*, 617 F. Supp. 3d at 934 (citing *Kaufman*, 877 F.3d at 285)).

Here, the circumstances surrounding the settlement, the monetary benefit to the class, and the lack of opposition support its adequacy. It was reached in good faith following two years of litigation which involved substantial discovery with parties and a third-party vendor who provided the timekeeping device at issue, mediation, and two weeks of negotiations (Doc. 21, p. 20). *C.f. In re Tiktok*, 617 F. Supp. 3d at 934 (approving a BIPA settlement where "the settlement was the product of months of arms-length negotiation punctuated by two mediation sessions led by a well respected former federal judge… refined through further negotiation by a Court-appointed leadership group . . .  the parties ha[d] conducted substantial confirmatory discovery, . . . [a]nd Defendants ha[d] raised a vigorous factual and legal defense and continue to dispute liability for every claim."). Additionally, the settlement lacks a "'clear sailing' clause—a clause in which the defendant agrees not to contest class counsel's request for attorneys' fees." *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (explaining that clear-sailing agreements illustrate the danger of collusion between class counsel and defendant, to class members' detriment, "[b]ecause it's in the defendant's interest to contest that request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider.") The lack of a clear-sailing clause weighs in favor of the

8

settlement's trustworthiness. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 620 (N.D. Cal. 2021), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (granting final approval of a BIPA settlement where "parties engaged in several rounds of mediation with respected neutrals, including a retired judge, . . . [t]he settlement agreement d[id] not contain a 'clear sailing' provision, and all indicia point to a finding that the proposed settlement was the product of serious, informed, and noncollusive negotiations."). The settlement agreement provides class members with a substantial monetary benefit of over $1,000 per person that compares favorably to that provided in other BIPA settlements involving an employer's collection of employees' fingerprints or handprints. *See, e.g.*, *Scott et al v. Syncreon North America, Inc.*, No. 3:19-cv-00164 (S.D. Ill. 2021), ECF Dkt. 51, 55 (settlement class members each received a net recovery of approximately $550 from a settlement fund of $50,600); *Martinez v. Nando's Restaurant Grp. Inc.*, No. 1:19-cv-07012 (N.D. Ill. 2020), ECF Dkt. 63 (1,787 class members each received a net recovery of approximately $652 from the settlement fund of $1,787,000); *Burlinski et al. v. Topgolf USA Inc. et al.*, No. 1:19-cv-06700 (N.D. Ill. 2021), ECF Dkt. 101, 103 (2,600 class members each received a net recovery of approximately $630 out of the $2,633,400 settlement fund); *see also, e.g.*, *In re Tiktok*, 617 F. Supp. at 934 (collecting privacy litigation class action cases to justify the net recovery for Illinois subclass members who would receive $163.13); *In re Facebook*, 522 F. Supp. at 620 (providing at least $345 for every class member); *c.f. Stauffer v. Innovative Heights Fairview Heights, LLC, et al.*, Case No. 3:20-cv-00046-MAB (S.D. Ill.), ECF Dkt. 208, 201 (magistrate judge granting preliminary approval of a class action against an employer for the violation of

9

BIPA involving employees' fingerprints where each class member is expected to receive at least $723 net recovery).

However, the Court must also weigh the benefits of the settlement against the risks posed by continued litigation. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Settlement; *see also Dorvit ex rel. Power Sols.* Int'l, Inc. v. Winemaster, 950 F.3d 984, 988 (7th Cir. 2020) ("We expect district courts, in assessing proposed settlements, to 'weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interest of the [class].'" *(quoting* United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co., 447 F.2d 647, 655 (7th Cir. 1971)). As Plaintiff states in his final approval motion, Defendant presented multiple defenses which could have precluded its liability under BIPA, including that the information captured by the technology at issue was not covered by BIPA as it did not qualify as biometric identifiers or information, that Plaintiff's claims were barred by the applicable statute of limitations, that Defendant was exempt from BIPA as a governmental contractor, or that Plaintiff consented to the collection, use, and storage of the data to satisfy BIPA (Doc. 58, pp. 19-20). Furthermore, if this case progressed on the merits, it would likely involve extensive motion practice over class certification. Without commenting on the merits of these arguments, the Court notes that the risk of continued litigation in this case supports settlement.

The remaining factors also support the fairness, adequacy, and reasonableness of the settlement. Based on its review of the documents and the final fairness hearing, the

Court believes that the complexity, length, and expense of further litigation in this BIPA class action weighs in favor of the settlement. Additionally, the class members' lack of opposition to the settlement is "strong circumstantial evidence" in favor of the settlement's reasonableness in regards to the third and fourth factors. *See In re Mexico Money Transfer Litig.,* 164 F.Supp.2d 1002, 1021 (N.D.Ill. 2000) (collecting cases to support its holding that the fact that more than "99.9% of class members have neither opted out nor filed objections ... is strong circumstantial evidence in favor of the settlement"); *see also In re Sw. Airlines Voucher Litig.,* No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013), *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015) ("Such a low level of opposition [0.01%] supports the reasonableness of the settlement."); *In re Tiktok*, 617 F. Supp. at 937 ("The relative dearth of opposition to the settlement and the reaction of class members weighs in favor of approval as well."). The declaration of class counsel demonstrates their competency in satisfaction of the fifth factor, as the firm is experienced in consumer protection class actions and has litigated dozens of class actions under BIPA (Doc. 58-2). Finally, the case settled after two years of litigation and the near completion of discovery, which weighs in favor of the sixth factor.

For the above reasons, the Court finds that the proposed settlement is fair, reasonable, and adequate pursuant to the requirements of Rule 23(e). The Court hereby finally certifies the Settlement Class for settlement purposes, finds for settlement purposes that the Settlement Class satisfies all the requirements of Federal Rule of Civil Procedure 23, approves the Electronic Privacy Information Center as the *cy pres* beneficiary of remaining funds after the expiration date of the second distribution as

11

provided for in the Settlement Agreement as the organization is closely aligned with the class's privacy interests. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013). Accordingly, with class certification, notice, and fairness satisfied, the Court **GRANTS** Plaintiffs' motion for final approval of the class settlement.

## Award of Attorneys' Fees, Costs, and Service Award

a. **Attorneys' Fees and Costs**

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *see also Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit."). This common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton*, 504 F.3d at 691 (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir.1988)). However, courts must also be aware of the conflict of interest inherent in class action suits when assessing an award of attorneys' fees from a common fund. *See Redman*, 768 F.3d at 629 (reasoning that district courts must "bear[] in mind that the higher the fees the less compensation will be received by the class members"); .") *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 711 (7th Cir. 2015) (explaining that judicial scrutiny is required "based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests

12

first and foremost, particularly in classes certified under Rule 23(b)(3) that seek primarily monetary relief.").

"In assessing the reasonableness of a fee request, a district court must attempt to approximate the fee that the parties would have agreed to at the outset of the litigation without the benefit of hindsight." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 561 (7th Cir. 2022) (citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018)). District courts are tasked to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832-33 (7th Cir. 2018) (citing *Sutton*, 504 F.3d at 692). As this estimation is "inherently conjectural, . . . district courts can look to actual fee agreements, data from similar cases, and class-counsel auctions to guide their analysis." *Stericycle*, 35 F.4th 555, 560 (7th Cir. 2022) (citing *In re Trans Union Corp. Privacy Litigation*, 629 F.3d 741, 744 (7th Cir. 2011); *In re Synthroid Marketing Litigation* (*Synthroid I*), 264 F.3d 712, 721 (7th Cir. 2001)). Attorney fees that exceed the actual recovery to the class are presumptively unreasonable. *In re Sears*, 867 F.3d at 793 (citing *Pearson*, 772 F.3d at 780-81; *Redman*, 768 F.3d at 630-31).

The Seventh Circuit has calculated the reasonableness of an award of attorneys fees according to the "ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson*, 772 F.3d at 781. The calculation of what class members received excludes costs. *Id.*; *see also Redman*, 768 F.3d at 630 ("Administrative costs should not have been included in calculating the division of the spoils between class counsel and

13

class members."); *Camp Drug*, 897 F.3d at 833 n.25. Here, class counsel requests $354,505.76 in attorneys fees (Doc. 56, p. 9). After deducting $13,070 in net administration costs and $9,387.71 in counsel's out of pocket costs, the net common fund is $975,350.51. This amounts to an award of approximately 36% in attorneys' fees. This is similar to such awards in other consumer class actions, including those with claims under BIPA.[2] *See, e.g., Pratz v. MOD Super Fast Pizza, LLC,* (S.D. Ill. 2022) 3:21-cv-00757-RJD ECF Dkt. 29 (awarding class counsel 35% of the settlement in a BIPA class action); *Sherman v. Brandt Industries USA Ltd.*, No. 1:20-cv-01185-MMM-JEH, ECF No. 85 (C.D. Ill. Sep. 15, 2020) (Mihm, J.) (awarding fee award of 36% of net common fund in BIPA dispute); *McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 WL 1479304, *11 (S.D. Ill. Apr. 25, 2017) (approving fee award of approximately 36% of total settlement fund in FLSA action); *Guzman v. Nat'l Packaging Servs. Corp.*, No. 19-CV-1722-PP, 2022 WL 2657261, *14-15 (E.D. Wis. July 8, 2022) (approving fee award of approximately 36% of total settlement fund in FLSA action); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%).

Class counsel are also entitled to reimbursement of reasonable costs of litigation. "A request for reimbursement of litigation expenses is judged under the same market-based standard as a fee petition; the Court must ask whether the expenses are in keeping with what "the private market would permit."" *TikTok*, 617 F.Supp.3d at 946,

---

[2] As these cases were decided prior to the Seventh Circuit requiring administration costs to be deducted from the gross settlement when calculating an award of attorneys' fees, the percentage in these cases may be higher if they were recalculated from the net settlement amount, as the Court uses here. *See Redman*, 768 F.3d at 630.

14

(citing *Synthroid I*, 264 F.3d at 722). Here, class counsel requests reimbursement of $9,397.31 in litigation expenses.

But for class counsel's efforts in pursuing the class members' claims before the Court, the class members would not receive the immediate, quantifiable, and substantial benefits from the settlement agreement. For these reasons, the Court finds the requested award of attorney's fees and costs fair and reasonable. *But c.f. Camp Drug*, 897 F.3d at 833-34 (affirming the district court's attorney fee reduction from to $73,468.13, approximately one-third of the amount recovered by the class, where "[t]here was no paper discovery; no depositions were taken; and no substantive motions were filed" such that "the class counsel's requested fee of nearly a quarter of a million dollars for merely filing a complaint and negotiating a settlement bore little relationship to market reality"); *Pearson*, 772 F.3d at 781 (reasoning that "class counsel requested and were awarded excessive compensation" where "the attorneys' fees represented … an outlandish 69%" of the aggregate value of the consumer class action settlement).

Accordingly, Class Counsel are hereby awarded $354,505.76 for attorney fees and $9,397.31 for reimbursed expenses from the balance of the Settlement Fund, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Agreement.

    **b. Service Award**

District courts have discretion to grant a "service" or "incentive" award to a named plaintiff in cases where "it is necessary to induct an individual to participate in

the suit." *See Camp Drug*, 897 F.3d at 834 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Synthroid I*, 264 F.3d at 722. To determine whether a service award is justified, "a district court evaluates the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citing *Cook*, 142 F.3d at 1016). An incentive award is designed to compensate a class action plaintiff for bearing the risk of liability: "should the suit fail, he may find himself liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorney's fees." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012).

Class counsel seeks a service award of $10,000 for the named plaintiff, Jocelyn Roberts (Doc. 56, p. 14). Class counsel details various efforts by Roberts to assist the prosecution of this case on behalf of the class: participating in the initial investigation of his claims, provided information to class counsel to aid in preparing initial pleadings and reviewing those pleadings before filing, participating in discovery request responses, consulting with class counsel regularly and analyzing and approving the Settlement that resolved this case. For these reasons, the Court finds the requested amount of $10,000 is reasonable. *C.f. Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205 (N.D. Ill. 2018) (awarding $10,000 incentive award to named plaintiff); *Briggs v. PNC Financial Services Group*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *5 (N.D. Ill. Nov. 29, 2016) ($12,500 incentive award for each named plaintiff); *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *8 (N.D. Ill. Dec. 23, 2016) (authorizing

16

$10,000 incentive award for each named plaintiff). The Class Representative, Jocelyn Roberts, is hereby compensated in the amount of $10,000 for his efforts in this case.

## Conclusion

For the reasons stated above, the Court **GRANTS** the Motion for Final Approval of the Class Action Settlement (Doc. 58) and the Motion for Attorneys' Fees, Costs, and Service Award (Doc. 56). The Parties are **GRANTED** 90 days to conclude the settlement and distribution of all funds. The Clerk of Court is **DIRECTED** the Clerk of Court, 90 days after this Order is docketed, to dismiss the case in its entirety and enter judgment accordingly.

**SO ORDERED.**

Dated: July 11, 2024

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge